[No. 36423.    Department Two.    October 17, 1963.]

FRANKIE L. BLAND *et al.*, *Respondents*, v. JOSEPH P. MENTOR, JR. *et al.*, *Appellants*, DEAN D. JONES *et al.*, *Defendants.**

*Reported in 385 P. (2d) 727.

*Greenwood & Shiers*, by *Frank A. Shiers*, for appellants.

*Arthur & Hanley*, by *Terence Hanley*, for respondents.

HAMILTON, J.—On July 27, 1956, plaintiffs (respondents) entered into a standard form real-estate contract, by which they undertook to purchase from defendants (appellants) certain residence property situated in northern Kitsap County, Washington, for the sum of $6,000. The plaintiffs made an initial payment of $450, assumed possession of the premises, and agreed to pay the balance together with interest in regular monthly installments. In addition, plaintiffs covenanted to pay all taxes and to keep the buildings in good repair and insured against loss by fire. Between July, 1956, and August, 1960, a total of $1,941.58 was paid on the principal and $1,119.42 in interest. A balance of $4,058.42 plus interest remained due. The taxes for the years 1957 through 1960 were not paid. The premium on the fire insurance policy was due August 13, 1960, although, by its terms, the policy remained in effect until canceled.

In May, 1960, plaintiffs moved from the premises to Tacoma, Washington. On August 22, 1960, defendant Joseph P. Mentor, Jr., went to Tacoma where he obtained the signatures of the plaintiffs upon a standard form statutory warranty deed conveying the premises to defendants. Defendants concede acknowledgment of the deed to be defective. On August 30, 1960, the defendants contracted to sell the property to innocent third persons for $6,500, with a $300 down payment and monthly installments of $55 a month including interest. Plaintiffs requested payment for their equity. Defendants tendered a check in the sum of $100 marked in payment for a stove and plaintiffs' equity. Through an attorney plaintiffs returned the check asking that it be reissued in payment for the stove only and that satisfactory arrangements be otherwise made for payment of their equity. Defendants refused.

Plaintiffs commenced this action seeking nullification of the deed and judgment in the amount of their equity. Defendants failed to answer and a default judgment was entered nullifying the deed and awarding plaintiffs the

sum of $2,441.58 for their equity in the premises. Following issuance of a writ of execution upon the judgment, defendants moved for and were granted a stay of execution, vacation of the default judgment, and permission to file an answer, an affirmative defense and a counterclaim. By their pleadings defendants sought affirmance of the deed or, in the alternative, a setoff based upon the fair rental value of the premises during plaintiffs' occupancy and reimbursement of the delinquent taxes, and asked judgment for damages, attorneys' fees and costs in vacating the default judgment and writ of execution. Trial ensued before the court sitting without a jury.

Conflict in the evidence revolved about the representations and understanding of the parties at the time of the signing of the deed on August 22, 1960. In substance, plaintiffs' version indicated defendant Joseph P. Mentor, Jr., misrepresented the nature and the purpose of the document or documents signed, and led plaintiffs to believe that he would sell and pay them for their equity in the premises. The purport of defendants' evidence, on the other hand, was that plaintiffs had neglected, stripped, and abandoned the premises, and that they fully understood the nature of the deed, and were in accord with its purpose, which was to avoid the expense and embarrassment of a forfeiture proceeding.

Surrounding circumstances revealed by the evidence were to the effect that plaintiffs had, without objection by defendants, previously made late payments on the contract (the last payment being made on June 21, 1960), had received no tax notices, had listed the premises for sale with one or more realtors, made some arrangements for upkeep of the premises after moving to Tacoma, were desirous of retaining their equity until sold, and that plaintiff husband was not well versed in business matters. The evidence further indicated that defendants, although feeling plaintiffs had neglected, stripped, and abandoned the premises, had taken no formal steps to forfeit the contract, attempted to persuade plaintiffs to return to the premises and their work in Kitsap County, agreed to pay plaintiffs

something for their equity, had the deed notarized after August 22, 1960, and canceled plaintiffs' real-estate listing on the property prior to August 30, 1960.

The trial court, believing plaintiffs' version, found, in essence, (a) plaintiffs were not in substantial default and had not abandoned their contract, (b) defendant husband in bad faith represented to plaintiffs he would sell the premises for them and account for their equity, (c) pursuant to such representations plaintiffs executed the document in question, believing they were signing a sales agreement, and (d) consideration being given to the sale price of $6,500, the delinquent payments and taxes, expenses of sale, and prevailing discount rates, plaintiffs' net equity was of the value of $1,800. Based upon such findings, the trial court (1) reformed the instrument of August 22, 1960, making it effective as a quitclaim deed; (2) declared a constructive trust, to the extent of plaintiffs' equity upon defendants' interest in the property; (3) dismissed defendants' counterclaims; and (4) entered judgment against defendants individually and against their marital community in the sum of $1,800, together with costs in the sum of $82.10.

Defendants appeal.

Defendants by their written and oral arguments have limited their assignments of error to three basic contentions. They are: (1) A challenge to the sufficiency of the evidence supporting the trial court's findings of misrepresentation and constructive trust; (2) a claim of error in denying defendants' claim of setoff; and (3) a claim of error in dismissing defendants' claim for damages, attorneys' fees and costs incident to the default judgment and writ of execution.

Defendants, in support of their first contention, assert plaintiffs' testimony (particularly that of plaintiff wife), as to the events occurring on August 22nd, is inconsistent with the trial court's findings, is incredible, and is otherwise unworthy of belief. Thus, defendants urge, it lacks the requisite substance to constitute clear, cogent, and convincing proof essential to a finding of fraud or the imposition of a constructive trust.

■ We have defined substantial evidence as that character of evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed. *Wharton v. Department of Labor & Industries*, 61 Wn. (2d) 286, 378 P. (2d) 290.

We have said that the phrase "clear, cogent, and convincing" evidence denotes a quantum or degree of proof greater than a mere preponderance of the evidence. *Cheesman v. Sathre*, 45 Wn. (2d) 193, 273 P. (2d) 500; *Lewis Pac. Dairymen's Ass'n v. Turner*, 50 Wn. (2d) 762, 314 P. (2d) 625; *Holmes v. Raffo*, 60 Wn. (2d) 421, 374 P. (2d) 536. We do not deem the term connotes proof beyond a reasonable doubt.

What constitutes clear, cogent, and convincing proof necessarily depends upon the character and extent of the evidence considered, viewed in connection with the surrounding facts and circumstances. Whether the evidence in a given case meets the standard of persuasion, designated as clear, cogent, and convincing, necessarily requires a process of weighing, comparing, testing, and evaluating—a function best performed by the trier of the fact, who usually has the advantage of actually hearing and seeing the parties and the witnesses, and whose right and duty it is to observe their attitude and demeanor.

The appellate function should, and does, begin and end with ascertaining whether or not there is substantial evidence supporting the facts as found. *Gilbert v. Rogers*, 56 Wn. (2d) 185, 351 P. (2d) 535.

■ In *Nicolai v. Desilets*, 185 Wash. 435, 436, 55 P. (2d) 604, we have defined a constructive trust as:

" . . . the device used in equity to compel those who unfairly hold a property interest which they obtained or retain by reason of unjust or unconscionable means to convey that interest to, or to hold it for, another to whom it justly belongs; or, as Mr. Justice Cardozo, in *Meinhard v. Salmon*, 249 N. Y. 458, 164 N. E. 545, said:

" 'A constructive trust is then the remedial device through which preference of self is made subordinate to loyalty to others.' "

We have held that fraud, misrepresentation, bad faith, or overreaching usually forms the base upon which a constructive trust is erected. *Rozell v. Vansyckle*, 11 Wash. 79, 39 Pac. 270; *Saunders v. Visser*, 20 Wn. (2d) 58, 145 P. (2d) 898; *Bangasser & Associates, Inc. v. Hedges*, 58 Wn. (2d) 514, 364 P. (2d) 237. And, a constructive trust may be established by parol evidence. *Kausky v. Kosten*, 27 Wn. (2d) 721, 179 P. (2d) 950.

The presence or absence of fraud, in a given transaction, presents a question of fact. *Pletcher v. Porter*, 177 Wash. 560, 33 P. (2d) 109. Fraud can be established by the direct testimony alone of an interested party. *Floyd v. Myers*, 53 Wn. (2d) 351, 333 P. (2d) 654. On the other hand, fraud need not be established by direct and positive evidence. It may be proved, in whole or in part, by circumstantial evidence. *Karr v. Mahaffay*, 140 Wash. 236, 248 Pac. 801.

The trier of the facts, where the evidence is conflicting, may believe entirely the testimony of one party and disbelieve the testimony of the other party. *Delegan v. White*, 59 Wn. (2d) 510, 368 P. (2d) 682. The trier of the facts is not compelled, however, in weighing and evaluating the testimony to entirely believe or disbelieve one party as opposed to the other. *Plancich v. Williamson*, 57 Wn. (2d) 367, 357 P. (2d) 693. And, on appellate review, in determining the sufficiency of the evidence to support a finding of fraud or misrepresentation, we need only consider the evidence most favorable to the prevailing party. *Mori v. Covello*, 61 Wn. (2d) 630, 379 P. (2d) 727.

In the instant case, the trial court believed plaintiffs' testimony, weighed it with the surrounding circumstances and the testimony of defendant husband, determined the evidence to be clear, cogent, and convincing, and found as a fact that defendants acquired plaintiffs' equity through misrepresentation.

We will not disturb such finding. *Wickre v. Allen*, 58 Wn. (2d) 770, 364 P. (2d) 911; *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 343 P. (2d) 183. And, under the circumstances, we do not find the trial court abused its discre-

tion in applying the remedial measure of imposing a constructive trust.

Defendants next contend the trial court erred in refusing to setoff, against the value of plaintiffs' equity, the reasonable rental value of the premises during plaintiffs' occupancy. In support of this contention, defendants insist that either (1) a valid forfeiture of plaintiffs' equity in fact took place, thus entitling defendants to the installments paid on the contract as liquidated damages, or (2) that plaintiffs' action is basically one for rescission of the real-estate contract and, under previous decisions of this court, rental value is properly allowable,[1] or (3) equity and good conscience warrants such a setoff.

We find no merit in the first two arguments advanced by defendants. As to the first, the trial court did not accept defendants' testimony that the deed in question was given in lieu of a forfeiture. Instead, the trial court found, upon substantial evidence, that the defendants had previously accepted late payments, thereby waiving strict performance, that plaintiffs were not in substantial default, and that the document in question had been fraudulently induced and acted upon. As to the second, plaintiffs did not proceed upon the theory that their contract had been wrongfully rescinded or forfeited. They did not ask for their money back, nor were they bound to. Instead, it was plaintiffs' theory, and their version of events, that they never intended to forfeit or convey their contract interest to defendants. They stood upon their contract interest, as they had a right to do, and asserted fraud. The trial court found fraud, and because of the intervention of third party interests, reformed the document in issue and conveyed plaintiffs' interest to the defendants in trust. Their contract interest was thus neither rescinded nor forfeited, and they were entitled to the reasonable value thereof, less such adjustments and offsets as the circumstances equitably warranted.

---

[1] *Knowles v. LaPure*, 189 Wash. 456, 65 P. (2d) 1260; *Bean v. Hallett*, 40 Wn. (2d) 70, 240 P. (2d) 931.

■ Turning to defendants' third argument, we have said, in *Ryan v. Plath*, 18 Wn. (2d) 839, 868, 869, 140 P. (2d) 968:

"The rights of the respective parties in case of a constructive trust are matters of equitable cognizance and are to be determined in the light of the familiar maxim that he who seeks equity must do equity. In a suit relating to the establishment and enforcement of a constructive trust the relief to be granted depends largely upon the equities and circumstances of the particular case and, as a general rule, the court will adjust the relief in such a manner as will best afford protection to the rights of all parties concerned. . . .

". . .

"As stated before, allowance or disallowance of claims is a matter dependent upon the particular facts and circumstances of the case, and therefore rests largely in the good judgment and discretion of the chancellor. . . ."

In the instant case, the trial court, in arriving at the value of plaintiffs' net equity, gave consideration to the prevailing discount rates, the delinquent taxes and penalties, the unpaid installments, and the expenses of defendants' resale. Although it might be said that had we, individually or collectively, been sitting as the trial judge, we might have given more or less weight to other factors, *e.g.*, the interest paid by plaintiffs or the reasonable rental value of the premises during plaintiffs' possession thereof, we cannot say under all the circumstances, that the trial judge abused his discretion in denying defendants a full or partial offset by way of rental value.

■ We are, however, convinced that the trial court erred in entering judgment effective against the general estate of the defendants. Although there might well be exceptions, we stated that which we conceive to be the general rule in *Heidelbach v. Campbell*, 95 Wash. 661, 665, 164 Pac. 247, as follows:

". . . The right of the beneficiary to pursue a fund and impose upon it the character of a trust is based on the principle that it is the property of the beneficiary, not upon any right of lien against the wrongdoer's general estate; and this, whether the property sought to be recovered is

in the form in which the beneficiary parted with its possession or in a substituted form. . . ."

We therefore hold, in the instant case, that the lien of plaintiffs' judgment should attach only to defendants' interest in the property here involved and to the proceeds thereof.

Defendants lastly assign error to the trial court's dismissal of their claim seeking attorneys' fees and costs, arising out of the default judgment, the writ of execution thereupon, and the vacation thereof. The basis of defendants' claim, in this respect, is their assertion that the writ of execution was wrongful. The trial court in deciding this facet of the case stated:

"Now, as to the cross complaint: This is limited to attorney's fees incurred by Mr. Mentor in dissolving an attachment of some of his goods by the sheriff after judgment had been taken against him by default. . . . I can't in good conscience allow him attorney fees where he has notice that an attachment may issue—execution may issue—unless he does something. It seems to me that would be compensating a person for failure to use reasonable diligence, common sense, fair dealing. And it is indisputable in this case that Mr. Hanley [plaintiffs' counsel], before obtaining this writ, did attempt to persuade Mr. Mentor to get some legal advice as to what he should do. If he had done so, I am satisfied that the writ would not have issued and this additional expenditure would not have been required."

Assuming, without deciding, defendants' claim of wrongful attachment would support an award of attorneys' fees, we are satisfied the trial court gave full consideration to the claim and did not err in denying an allowance.

The judgment is affirmed as modified. Plaintiffs will recover their costs.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.