[No. 33974-5-I. Division One. August 26, 1996.]

COLONIAL IMPORTS, *Respondent*, v. CARLTON NORTHWEST, INC., *Appellant*.

230

*David J. Smith* and *Gregory C. Sisk*, for appellant.

*David C. Kelly* and *Williams, Kastner & Gibbs*, for respondent.

KENNEDY, A.C.J. — Carlton Northwest, Inc., d.b.a. Don Carlton Honda (Carlton), appeals the trial court's determination that Colonial Imports, trading as Colonial Honda (Colonial) established an equitable estoppel by clear, cogent and convincing evidence. In *Colonial Imports, Inc., v. Carlton Northwest, Inc.,* 121 Wn.2d 726, 737, 853 P.2d 913 (1993) our Supreme Court remanded that issue to the trial court, noting that "the facts suggest that Colonial has made out a case for equitable estoppel," but declining to resolve the issue as a matter of law because more than

one reasonable inference could be drawn from conflicting evidence presented at the trial. Whether the trial court erred depends upon the sufficiency of the evidence to persuade any rational trier of fact that it is "highly probable" that manufacturer's certificates of origin (MSOs) are relied upon in the ordinary course of business (here, the business of dealer exchanges of new cars) to evidence a transfer of ownership. *See Colonial Imports*, 121 Wn.2d at 735 (clear, cogent and convincing evidence standard requires trier of fact be convinced the fact in issue is highly probable); and at 736 n.3 (dispositive issue in deciding whether estoppel can lie is whether, in ordinary course of business between dealers, MSOs are relied upon to evidence a transfer of ownership). Because any rational trier of fact could be persuaded by substantial evidence that the dispositive fact is highly probable, and because the evidence here is substantial, we affirm the trial court's judgment in favor of Colonial.

Colonial cross-appeals the trial court's decision to suspend prejudgment interest during the pendency of the previous appeals of this case. The trial court reasoned that Colonial is responsible for the time spent on those appeals because Colonial led the trial court into the error of applying the preponderance of the evidence standard with respect to equitable estoppel. Colonial argues that prejudgment interest is a matter of right and that the trial court abused its discretion by departing from the rule that prejudgment interest will be part of the make-whole remedy to which a litigant is entitled when it recovers a liquidated amount. Although prejudgment interest on the recovery of a liquidated amount ordinarily is a matter of right, we conclude that the right is not absolute and that a trial court may, in its discretion, suspend prejudgment interest where a plaintiff, without a basis in law or a reasoned argument for the extension of law, has invited clear trial court error which must be corrected on appeal before the defendant's liability can be finally determined. Bad faith by the plaintiff is not a prerequisite of the

exercise of such trial court discretion. We affirm the trial court's exercise of discretion in this case.

## FACTS

The facts are well stated in *Colonial Imports,* 121 Wn.2d at 727-30 and need not be repeated here. The trial court reconsidered the evidence in light of the proper burden of proof as instructed by the Supreme Court, 121 Wn.2d at 737, and after considering additional briefing and argument, entered findings of fact and conclusions of law following remand. First, the trial court restated and reaffirmed its previous findings of fact. Next, the court entered supplemental findings regarding MSOs:

> a. That in the ordinary course of business between dealers, MSOs are relied upon to evidence the transfer of ownership of the vehicles described thereon.
>
> b. That numerous transactions are conducted every day between dealers using MSOs.
>
> c. That MSOs are carefully guarded by dealers and are not released in a haphazard or careless manner; and
>
> d. That the language on MSOs documenting a transfer of ownership is clear and unambiguous[.]

Clerks Papers at 236. Next, the trial court made supplemental findings regarding the inquiry by Larry Matthews of Colonial Imports to Pat Deacon of Don Carlton Honda:

> a. Larry Matthews of Colonial Honda, while in possession of the original MSOs, inquired of defendant "whether everything on the MSOs was as it appeared to be." Pat Deacon of Don Carlton Honda answered "yes." This inquiry was sufficient and reasonable to establish that the MSOs were valid documents and that in fact ownership of the vehicles referenced thereon had been transferred as described on the MSOs.
>
> b. The court also finds that Mr. Matthews['] inquiry was sufficient, that by making such inquiry Mr. Matthews was asking for affirmance of every issue, that there was no need

for Mr. Matthews to ask—why are the cars still on your lot—because it was evident to everyone why the cars were on the lot. This was a broker deal; it was self-evident that the cars would not be shipped in one direction only to be shipped in another.

 c. Under the circumstances of this case, including Mr. Matthews['] inquiry to Mr. Deacon of Don Carlton Honda, it was reasonable for Mr. Matthews to rely upon the MSOs as evidence of a transfer of ownership from defendant to Imports Unlimited and then from Imports Unlimited to Colonial Honda.

Clerk's Papers at 237. The court went on to conclude that Colonial had made out its case for equitable estoppel with clear, cogent and convincing evidence, and that Carlton was estopped from denying that ownership of the vehicles had been transferred by it to Imports Unlimited and by Imports Unlimited to Colonial. Carlton was, therefore, liable to Colonial for conversion.

The court reaffirmed its award to Colonial of $229,209, the sum Colonial had paid to Imports Unlimited for the purchase of the twenty automobiles, and reaffirmed its award of prejudgment interest on that amount from August 1, 1988, the date of the conversion, to January 10, 1991, the date of the original judgment. The court declined Colonial's request to extend the prejudgment interest to cover the two-year period of the appeals to this court and to the Supreme Court:

> This court finds that the appeal in this matter was caused in substantial part by plaintiff's position that the evidentiary standard in this case on plaintiff's equitable estoppel claim was preponderance of evidence, which . . . incorrect legal position was a substantial cause of the delay in this case[.]
>
> . . . [T]he court suspends interest from January 10, 1991 to the date the judgment following remand is entered.

Clerk's Papers at 240. Colonial calculates that it thereby lost some $81,000 in prejudgment interest.

This timely appeal and cross-appeal followed.

## DISCUSSION

### I

 Because equitable estoppel is not a favored doctrine, the party asserting estoppel must prove each of its elements by clear, cogent and convincing evidence, that is, by evidence of sufficient persuasive impact to cause the trier of fact to believe that the fact in issue is highly probable. *Colonial Imports,* 121 Wn.2d at 734-35. "In other words, 'the facts relied upon to establish an equitable estoppel must be clear, positive, and unequivocal in their implication . . . .' " 121 Wn.2d at 735 (quoting 28 AM. JUR. 2D, *Estoppel and Waiver* § 148, at 831 (1966)). Carlton argues that the evidence in this case lacks the persuasive impact required by the law, in that it is unclear and highly equivocal. We disagree. To illustrate why, we will summarize the testimony of several witnesses who testified at the trial.

It will be recalled that this litigation arose from the third in a series of dealer exchanges by Don Carlton Honda, brokered by Imports Unlimited. The first two exchanges were between Carlton and a Virginia dealership known as Casey Honda. Sheila Geiger was the office manager of Casey Honda at the time of those first two brokered transactions. Ms. Geiger had thirty years of management experience in the automobile dealership industry, including twelve years at Casey Honda. She testified that when she receives MSOs endorsed to Casey Honda, "then as far as we are concerned we own the vehicles." Report of Proceedings, October 24, 1990, at 20. When asked where she got that notion, Geiger replied, "That is just something that is part of the automobile industry. When a title is assigned to you, it's your car. An MSO is the same thing as a title. It just happens to be the original origin of the vehicle." Report of Proceedings, October 24, 1990, at 26. She had never paid for vehicles on the basis of MSOs and then failed to get the cars—and

knew of no other dealer who had paid for vehicles on the basis of endorsed MSOs and been required to sue to obtain the cars, until she heard of the instant lawsuit.

Gerald Bradshaw, the sales manager at Casey Honda, was also involved in the two previous brokered transactions. Bradshaw testified that an MSO shows ownership of the vehicle as far as dealerships are concerned and that when Casey Honda paid the money to Imports Unlimited for the cars, he considered Casey to be the owner of the cars, "[b]ecause I had the MSOs." Report of Proceedings, October 24, 1990, at 40. This was so even though the vehicles themselves were still in Washington in the possession of Carlton Honda. Bradshaw had never given up an MSO before receiving payment for the vehicle because "once I have given up the MSO I feel like I've lost the right of ownership of the vehicle." Report of Proceedings, October 24, 1990, at 45. Without the MSO, a dealer cannot sell the car to someone else because without the MSO a dealer cannot produce title to the vehicle. Bradshaw testified that he was familiar with industry standards for brokered transactions between dealers and that in his opinion Colonial Honda, having the endorsed MSOs in its possession, reasonably paid the broker for the vehicles in the instant transaction. This was particularly so, in that Mr. Matthews inquired of Carlton Honda, before paying the money, asking whether everything was as represented on the MSOs. Moreover, by industry standards, a selling dealer will not deliver an endorsed MSO without the money in hand or otherwise secured, even if the selling dealer retains possession of the vehicle, because "if the car is still sitting on his lot without an MSO, he has no right to sell the automobile. He's already given up that right by MSO endorsement." Report of Proceedings, October 24, 1990, at 52.

Mr. Pat Deacon, Carlton Honda's own general manager, testified that one of the purposes of an MSO is to track ownership and that he would characterize an MSO as being like the title to an automobile. It is the only document

that allows a selling dealer to give retail purchasers a certificate of title. Deacon also testified that it was well known at Carlton Honda that Imports Unlimited had been untruthful, in the two earlier transactions, about when payment would be made—Carlton had been told that the money had been sent when that had not yet happened, and payment had been unreasonably delayed on both previous occasions. Even in light of this knowledge, Deacon believed that when he endorsed the MSOs over to Imports Unlimited, warranting title to the vehicles there listed, he was selling the cars to Imports Unlimited. Deacon also admitted that "maybe a person can rely upon the MSOs if they have actually paid for the vehicles." Report of Proceedings, October 24, 1990, at 161.

Ted Lange, an attorney practicing in Seattle, testified that although an MSO is not a substitute for the goods, it is evidence of ownership. A broker or dealer with an endorsed MSO in his or her hands has the appearance of ownership. Mr. Lange would advise a dealer client never to endorse an MSO unless he or she intends to transfer ownership. It is not a reasonable and prudent business practice for a dealer to endorse an MSO over to a wholesale broker if he or she does not intend to transfer ownership.

The evidence above outlined was not entirely undisputed. Robert Fisher, a wholesale broker, testified that an MSO "is a worthless piece of paper." Report of Proceedings, October 26, 1990, at 42. Fisher believed that brokers, who are not licensed or controlled, are generally distrusted by dealers. Fisher agreed, however, that selling dealers in the United States generally do not send endorsed MSOs to brokers unless they, the selling dealers, have first been paid. In the wholesale car business, an MSO is "purely secondary to money." Report of Proceedings, October 26, 1990, at 43.

Ed Tonkin, the vice president of a large Oregon Toyota dealership, testified that he does not buy or sell cars through brokers, does not like to deal with brokers, feels there is danger in dealing with brokers and believes that

Colonial acted unreasonably in paying a large sum of money to a broker without fully protecting itself. In Tonkin's view, industry standards and expectations are that a buying dealer is not fully protected by an endorsed MSO alone—the buying dealer must have possession of the vehicle, as well. "[P]rudent business people would obtain possession of the goods, particularly if they are coming from across the country and it's people you haven't dealt with on a regular basis . . . ." Report of Proceedings, October 25, 1990, at 70. Mr. Tonkin agreed, however, that an MSO is a record of ownership and evidence of ownership and that a reasonable and prudent dealer would not let an MSO out of his or her hands without first getting full payment.

## II

■■ We next consider the standard of appellate review. Our only function is to ascertain whether or not there is substantial evidence supporting the facts as found. *Bland v. Mentor,* 63 Wn.2d 150, 154, 385 P.2d 727 (1963). It is for the trial court, and not this reviewing court, to determine whether the evidence in a given case meets the standard of persuasion designated as "clear, cogent and convincing." *See Bland,* 63 Wn.2d at 154:

> What constitutes clear, cogent, and convincing proof necessarily depends upon the character and extent of the evidence considered, viewed in connection with the surrounding facts and circumstances. Whether the evidence in a given case meets the standard of persuasion, designated as clear, cogent, and convincing, necessarily requires a process of weighing, comparing, testing, and evaluating—a function best performed by the trier of the fact, who usually has the advantage of actually hearing and seeing the parties and the witnesses, and whose right and duty it is to observe their attitude and demeanor.

> The appellate function should, and does, begin and end with ascertaining whether or not there is substantial evidence supporting the facts as found.

(Citation omitted.)

██ ██ Like all evidentiary standards, the clear, cogent and convincing burden of proof contains two elements: (1) the amount of evidence that is prerequisite to submitting the question to the trier of fact (often referred to as the burden of production)—which only need be met by substantial evidence; (2) the burden of persuasion—the trier of fact (not the appellate court) must be persuaded that the fact in issue is "highly probable." (Citations omitted.) *Colonial Imports*, 121 Wn.2d at 734-35. Carlton has not previously argued that Colonial failed to meet its burden of production. *See* 121 Wn.2d at 734 ("In the case at hand, there is no allegation that the plaintiff has not met its burden of production."). In the present appeal, without explicitly challenging the sufficiency of the evidence to meet the burden of production, Carton implicitly does so, by asking us to rule as a matter of law that there is insufficient evidence in this case to persuade any rational finder of fact that it is highly probable that, in the ordinary course of business between car dealers, MSOs are relied upon to evidence a transfer of ownership. However, our previous ruling to that effect has been reversed by the Supreme Court:

> The Court of Appeals' holding that Colonial Honda was not justified in relying on the MSOs as evidence of ownership appears to relate to Colonial Honda's negligent misrepresentation claim, not its estoppel claim. As such, its holding was irrelevant, since the negligent misrepresentation claim was premised on the phone call, not the MSOs themselves. *To the extent that this holding was meant to relate to the estoppel issue, we reverse the Court of Appeals. Justifiable reliance is properly an issue for the finder of fact.*

(Italics ours; citation omitted.) *Colonial Imports,* 121 Wn.2d at 736, 737 n.4.

We reject Carlton's invitation to repeat our previous error. We hold that Colonial met its burden of producing substantial evidence to support its equitable estoppel

claim. That being so, our appellate function necessarily ceases.

## III

On cross-appeal, Colonial raises two issues of first impression in Washington: (1) whether our trial courts have the discretion to suspend prejudgment interest on liquidated claims during periods of undue delay attributable to the recovering party; if so (2) whether this is an appropriate case for the exercise of such discretion. We answer yes to both questions.

Division Three of this court recognized the general rule that trial courts have authority to disallow prejudgment interest on liquidated claims in *Farm Credit Bank of Spokane v. Tucker*, 62 Wn. App. 196, 200-201, 813 P.2d 619, *review denied*, 118 Wn.2d 1001 (1991). The court was not called upon to decide whether this general rule is recognized in Washington, however, because the interest there at issue was awarded based on contract and not as damages to compensate the plaintiff for loss of use of money. After holding that the trial court erred when it disallowed *contract* interest on equitable grounds, Division Three nevertheless went on to observe that, even if the general rule disallowing prejudgment interest on equitable grounds were applicable, the evidence did not support the trial court's findings relative to the equities of that case. There followed a discussion of the evidence in light of the holding in *Getty Oil Co. v. Catalytic, Inc.*, 509 A.2d 1123 (Del. Super. Ct. 1986). *Farm Credit*, 62 Wn. App. at 202-04.

In *Starczewski v. Unigard Ins. Group*, 61 Wn. App. 267, 271-72, 810 P.2d 58, *review denied*, 117 Wn.2d 1017 (1991) the trial court awarded prejudgment interest to an insured from the date in 1986 when the insured's claim for loss of his property by fire would have become liquidated if the insurer had applied the correct standard for measuring loss. Thus, the trial court awarded prejudgment interest

on an *unliquidated* claim on an equitable ground. The insured appealed, arguing that the trial court should have awarded prejudgment interest from the date of the fire in 1982. The insurer attempted to cross appeal, arguing that the trial court erred by awarding any prejudgment interest whatsoever. This court declined to review the insurer's cross-appeal, in that its notice of appeal was not timely. Thus, the trial court's determination that it could properly award prejudgment interest on an unliquidated claim was the law of the case. The insured's argument that the trial court should have awarded more prejudgment interest was rejected. This court reasoned that *if* the trial court had the authority to award prejudgment interest on an unliquidated claim on equitable grounds, it had equal authority to decline to award prejudgment interest for the period of time during which the insured also contributed to the delay in liquidating his claim. *Starczewski*, 61 Wn. App. at 271-72.

Neither *Farm Credit* nor *Starczewski* resolves the question of whether Washington recognizes the authority of a trial court to suspend prejudgment interest on equitable grounds. Both cases recognize the underlying theory which has led other jurisdictions to recognize that authority. Colonial argues that the approach of other jurisdictions is not persuasive in Washington because Washington law bases prejudgment interest awards on the principle that a defendant who retains money which he or she ought to pay to another should, as a matter of public policy, pay interest on it, not as a penalty for wrongdoing, but simply as additional damages for the use value of money owed for a liquidated claim. *See Hansen v. Rothaus,* 107 Wn.2d 468, 473-75, 730 P.2d 662 (1986). *See also Bailie Communications, Ltd., v. Trend Business Sys., Inc.,* 61 Wn. App. 151, 162, 810 P.2d 12, 814 P.2d 699 (1991) (a claimant's entitlement to prejudgment interest in an appropriate case is of the same order as the same party's entitlement to postjudgment interest), *review denied,* 820 P.2d 511 (1991). Colonial reasons that prejudgment interest is a right grounded in sound public policy which should not be taken

away, even for reasons of delay attributable to the claimant. Otherwise, the claimant will not be made whole and the defendant will be unjustly rewarded for his or her own delay in paying a just debt. As colorfully stated by Colonial, "Carlton in effect is complaining that Colonial has somehow *prevented it from paying its debt earlier!*" Brief of Respondent/Cross-Appellant at 36.

■ We fully agree with Colonial that prejudgment interest on a liquidated claim is an element of damages grounded in sound public policy, and not a penalty imposed on a defendant for wrongdoing. We also agree that in an *appropriate case*, prejudgment interest is due as a matter of right. The question, however, is whether the right is absolute. Put another way, where the claim is for a liquidated sum, is the case always, invariably and without equitable exception "appropriate"?

■ We think not. Prejudgment interest is a make-whole remedy which itself is grounded on equitable principles, i.e., the " 'sense of justice in the business community . . . that he who retains money which he ought to pay to another should be charged interest on it.' " 5 A. CORBIN, CONTRACTS § 1046 n.69 (1964) (quoting *Laycock v. Parker*, 103 Wis. 161, 79 N.W. 327 (1899)). *See also Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 34, 422 P.2d 621 (1968).

In *Curtis v. Security Bank*, 69 Wn. App. 12, 20, 847 P.2d 507, *review denied*, 121 Wn.2d 1031 (1993), Division Three of this court said that "[a] trial court's award of prejudgment interest is reviewed for abuse of discretion," citing *Pannell v. Food Servs. Of Am.*, 61 Wn. App. 418, 449, 810 P.2d 952, 815 P.2d 812 (1991), *review denied*, 118 Wn.2d 1008 (1992). In his concurring opinion to *Ernst Home Center, Inc. v. Sato*, 80 Wn. App. 473, 910 P.2d 486 (1996), this court's Judge Pro Tempore Marshall Forrest challenged that proposition, opining that once it is determined that damages are liquidated, prejudgment interest is a matter of right, and that the trial court has no discretion to deny prejudgment interest. We agree with Judge Forrest that no Washington case to date has required an anal-

ysis of the standard of appellate review of a trial court's decision to award or disallow prejudgment interest; we respectfully disagree with his conclusion that prejudgment interest must always and invariably be a matter of absolute right, where the claim is liquidated. Although this question has not previously been addressed in Washington, except by Judge Forrest in *Ernst*, it has been addressed extensively in other jurisdictions.

Although at common law, prejudgment interest was generally not allowed on unliquidated claims, the United States Supreme Court recognized early on that this was not necessarily a hard and fast rule: "Interest is not generally allowable upon unliquidated damages. We will not say that in no possible case can interest be allowed [on an unliquidated claim]." *Mowry v. Whitney*, 81 U.S. (14 Wall.) 620, 653, 20 L. Ed. 860 (1871). In *Miller v. Robertson*, 266 U.S. 243, 257-58, 45 S. Ct. 73, 69 L. Ed. 265 (1924) the Supreme Court reiterated this position:

> Compensation is a fundamental principle of damages, whether the action is in contract or in tort. One who fails to perform his contract is justly bound to make good all damages that accrue naturally from the breach; and the other party is entitled to be put in as good a position pecuniarily as he would have been by performance of the contract. One who has had the use of money owing to another justly may be required to pay interest from the time the payment should have been made. Both in law and in equity, interest is allowed on money due. Generally, interest is not allowed upon unliquidated damages. But when necessary in order to arrive at fair compensation, the court in the exercise of a sound discretion may include interest or its equivalent as an element of damages.

(Citations omitted).

Just as the courts' discretion to award prejudgment interest on unliquidated claims in some circumstances has long been recognized in the federal courts, so also has the courts' discretion to deny prejudgment on liquidated claims in some circumstances. In *Redfield v. Ystalyfera*

*Iron Co.*, 110 U.S. 174, 176, 3 S. Ct. 570, 28 L. Ed. 109 (1884) the United States Supreme Court disallowed prejudgment interest on a liquidated claim where the claimant had unreasonably delayed prosecution of his claim. In *Blau v. Lehman*, 368 U.S. 403, 414, 82 S. Ct. 451, 7 L. Ed. 2d 403 (1962) the court observed that " 'interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness' " (quoting *Board of Comm'rs of Jackson County v. United States*, 308 U.S. 343, 352, 60 S. Ct. 285, 84 L. Ed. 313 (1939)). Even in admiralty cases, where prejudgment interest has long been favored, the Supreme Court said in *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 115 S. Ct. 2091, 2096, 132 L. Ed. 2d 148 (1995):

> Despite admiralty's traditional hospitality to prejudgment interest, however, such an award has never been automatic. In *The Scotland*, 118 U.S. 507, 518-519. 6 S.Ct. 1174, 1175, 30 L.Ed. 153 (1886), we stated that the "allowance of interest on damages is not an absolute right. Whether it ought or ought not to be allowed depends upon the circumstances of each case, and rests very much in the discretion of the tribunal which has to pass on the subject . . . ." . . . Although we have never attempted to exhaustively catalogue the circumstances that will justify the denial of interest, and do not do so today, the most obvious example is the plaintiff's responsibility for "undue delay in prosecuting the lawsuit." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657, 103 S.Ct. 2058, 2063, 76 L.Ed.2d 211 (1983). Other circumstances may appropriately be invoked as warranted by the facts of particular cases.

(Some citations omitted; footnote omitted).

Similarly, in *Getty Oil*, 509 A. 2d at 1124, the Supreme Court of Delaware said:

> Pre-judgment interest [on a liquidated claim] is available in Delaware as a matter of right. This right, however, is not absolute. Where a plaintiff has delayed the prosecution of an action, this Court may, in its discretion, reduce the amount of interest recoverable by the plaintiff.

(Citation omitted).[1]

Although we agree with Judge Forrest that the Washington appellate courts have thus far treated prejudgment interest as a matter of right where the claim is liquidated, we find nothing in our case law which would cause us to conclude that the right is necessarily absolute, regardless of delay attributable to the claimant. Our prejudgment interest rule is founded on the same judge-made principles of fairness pronounced by the United States Supreme Court in *Milwaukee,* 515 U.S. 189, and in dozens of other cases. Neither do we believe that Washington trial judges are any less capable of exercising sound discretion than are their federal counterparts, so that a rigid rule regardless of considerations of fairness would not seem necessary to the orderly administration of justice in this state. Indeed, recognizing the authority of the trial bench to disallow prejudgment interest where it would otherwise be a matter of right, due to undue delay attributable to the claimant, would seem to encourage the expeditious prosecution of liquidated claims. We hold that prejudgment interest on liquidated claims ordinarily is a matter of right, but that Washington trial judges have discretion to disallow such interest during periods of unreasonable delay in completing litigation that is attributable to claimants.

██ Whether this is an appropriate case for the exercise of trial court discretion is a closer question. In *Getty Oil,* 509 A.2d at 1126 (relied upon by the *Farm Credit* court, 62 Wn. App. at 202) the Delaware court described the kind of delay that will justify the suspension of prejudgment interest in that state:

---

[1]Although the Delaware Supreme Court said in *Moskowitz v. Mayor and Council of Wilmington,* 391 A.2d 209, 210 (1978) that prejudgment "[i]nterest is awarded in Delaware as a matter of right and not of judicial discretion," at 211 of the same opinion the court said:

> While interest is a matter of right in Delaware, the Trial Court does have some discretion in determining the amount of interest where there has been undue delay in the process of a lawsuit; for it is improper for a plaintiff to benefit by his failure to prosecute his own claim.

(Citation omitted).

> It may be fairly stated that delay such as will suspend the running of prejudgment interest is either (1) a failure by the plaintiff or his attorney to take some action in the prosecution of a case at a time that would otherwise seem appropriate to a reasonable person or attorney, or (2) the taking of some ·action by the plaintiff or his attorney that bears absolutely no reasonable relation to the prosecution of the case or is otherwise impermissible.

> . . . [N]o element of bad faith is necessary.

Colonial apparently entertained a serious doubt that its evidence carried the persuasive impact required to meet the clear, cogent and convincing standard of proof. Accordingly, Colonial argued for the preponderance of the evidence standard, successfully at trial, but unsuccessfully on appeal to this court and upon review by the Supreme Court.

It cannot be said that the standard of evidentiary persuasion to be applied in a given case "bears absolutely no reasonable relation to the prosecution of the case." *Getty Oil*, 509 A.2d at 1126. Neither is it necessarily "impermissible" to press for a position that ultimately fails. Still, as set out by the Supreme Court in *Colonial Imports*, 121 Wn.2d at 735-36, in pressing its position Colonial relied on two Washington cases in which the standard of proof was not in issue, and Colonial ignored numerous cases applying the higher evidentiary standard outside the context of claims against the government or claims involving an interest in real property. Essentially, Colonial pressed a clearly erroneous legal position upon a busy trial judge, a position which had no reasonable possibility of withstanding appellate scrutiny. The delay here is analogous to the type of delay recognized by the *Getty Oil* court.

We do not question Colonial's good faith. Indeed, we agree with the *Getty Oil* court that bad faith need not be shown as a prerequisite to the exercise of trial court discretion. Notwithstanding its good faith, however, Colonial invited clear trial court error, thereby unjustifiably delay-

ing the completion of this litigation. If the trial court had been asked to apply the correct evidentiary standard, it obviously would have done so, and Colonial obviously would have had the same supportable judgment in its favor on the equitable estoppel claim as it now has, but some two years earlier.

This being so, the trial court was faced with competing equities. On the one hand, prejudgment interest is payable on liquidated claims based on the theory that one ought to pay interest in exchange for retaining the use of another's money, and the defendant's belief that he or she never owed the money in the first place has never been an excuse for avoiding interest on a liquidated claim. *Prier*, 74 Wn.2d at 34. Here, Carlton took the position that it never owed the money in the first place, and the invited error related to the resolution of that ultimate issue. Delay in reaching the day of reckoning is usually viewed as benefiting the defendant, who retains the use of the plaintiff's money in the meantime.

On the other hand, prejudgment interest is ordinarily awarded at the statutory rate, which at the time of the hearing on remand and at present, giving prevailing market conditions, is considerably higher than the rate most private investors would expect to recover. The record contains no indication that Carlton profited from the retention of Colonial's money at any particular rate of interest, or indeed that Carlton profited at all.[2] We see no injustice, and no violation of the public policy which underlies the prejudgment interest rule, in the trial court's determination that Colonial, having without any reasoned basis invited clear error which required some two years in the appellate courts to correct, should not collect prejudgment interest for the time attributable to correction of the invited error.

---

[2]The record reflects that prior to trial, the parties agreed that Carlton could sell the cars, so that they need not sit on the lot during the litigation. Accordingly, Colonial returned the MSO's to Carlton, without prejudice to either party's position at trial. Carlton's profits from these sales is not reflected in the record.

Accordingly, we affirm the trial court's suspension of prejudgment interest and the judgment in favor of Colonial.

COLEMAN, J., concurs.

BAKER, C.J. (dissenting) — I respectfully dissent from that portion of the majority's opinion which holds that trial courts may suspend prejudgment interest in liquidated damage cases on equitable grounds.

As discussed by Judge Pro Tempore Marshall Forrest in his concurring opinion in *Ernst Home Center, Inc. v. Sato*, 80 Wn. App. 473, 910 P.2d 486 (1996), in Washington the right to prejudgment interest on a liquidated damage case has been uniformly applied. The effect of the majority's opinion on this issue is to create major uncertainty and confusion by allowing "suspension" of this right on the amorphous grounds of "equity." In my opinion, a settled proposition of law should not be so severely undermined without strong justification.

The reasons given by the majority for upsetting heretofore settled law in Washington are not convincing. The majority purports to agree with, then ignores, the proposition that prejudgment interest on a liquidated claim is an element of damages grounded in sound public policy, and not a penalty imposed on a defendant for wrongdoing. Majority at 240. If a defendant wishes to protect itself against the prejudgment interest rate provided by statute, all the defendant need do is pay into the registry of the court that amount which the defendant believes is the proper judgment amount. By doing so, prejudgment interest is tolled on the amount deposited.

The facts of this case do not provide any justification for a decision marking a fundamental shift in settled law. As the majority acknowledges, no question of frivolousness or bad faith is present in this case. We are dealing with a case of one party arguing an incorrect legal standard to the trial court. If that is to be a basis for suspending the

settled rule entitling the prevailing party to prejudgment interest on a liquidated damages case, I fear we are left with no rule at all.