GETTY OIL COMPANY, INC., a Delaware corporation, and Getty Refining & Marketing Co., a Delaware corporation, Plaintiff,

v.

CATALYTIC, INC., a Delaware corporation, Defendant.

Superior Court of Delaware,
New Castle County.
Submitted: Jan. 20, 1986.
Decided: April 10, 1986.

Ben T. Castle, Donald Elihu Evans, and Carolyn J. Warter of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff.

Susan C. Del Pesco of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendant.

GEBELEIN, Judge.

This is an action to enforce an indemnification contract. After a jury trial, a verdict was returned in favor of the plaintiff, Getty Oil Company (hereinafter "Getty"), and the only remaining issue is the extent to which Getty is entitled to an award of pre-judgment interest.

On August 8, 1972, Carlton L. Loden and his wife, Shirley E. Loden, filed a personal injury suit against Getty Oil Company for injuries sustained by Mr. Loden while performing, as an employee of Catalytic, Inc. (hereinafter "Catalytic"), certain maintenance work at Getty's Delaware refinery. *Loden v. Getty*, C.A. No. 652, 1972. On November 1, 1972, Mr. Loden committed suicide. Soon thereafter, Mrs. Loden changed *Loden v. Getty* into a wrongful death, as well as a survival action.

In April of 1975, shortly before the date set for trial in *Loden v. Getty*, Getty moved to join Catalytic as a third-party defendant in that action to establish Catalytic's liability to Getty under an indemnification contract between the two companies. Because trial in *Loden v. Getty* was imminent, however, the motion was denied.

Mrs. Loden and Getty reached a settlement of the survival action on July 18, 1975 in the amount of $300,000. Getty paid $200,000 of that amount, and Catalytic, pursuant to the indemnity agreement, paid $100,000. Approximately two years later, in April of 1977, Getty filed the present action against Catalytic seeking to establish Catalytic's liability under the indemnification agreement for the $200,000 paid by Getty in settlement of the survival action and for any further amounts for which Getty might be found liable in the pending wrongful death action by Mrs. Loden.

On July 25, 1977, Mrs. Loden received a favorable verdict in the wrongful death action in the amount of $580,000. While on appeal, however, the wrongful death action was settled for $530,000.

On December 9, 1985, approximately ten years and five months after settlement of the *Loden* survival claim and approximately eight years after settlement of the *Loden* wrongful death claim, Getty prevailed in the present action, establishing Catalytic's liability under the indemnification agreement for the $200,000 paid by Getty on the survival claim and for the $530,000 paid by Getty on the wrongful death claim. Getty now seeks an award of pre-judgment interest on those amounts.

■ Pre-judgment interest is available in Delaware as a matter of right. *Moskowitz v. Mayor and Council of Wilmington*, Del.Supr., 391 A.2d 209 (1978). This right, however, is not absolute. Where a plaintiff has delayed the prosecution of an action, this Court may, in its discretion, reduce the amount of interest recoverable by the plaintiff. In the present controversy, Cata-

lytic claims numerous instances of delay by Getty in prosecuting the action.

■ Catalytic contends, first, that this Court should deny Getty interest for Getty's delay in filing the present action. Getty's cause of action against Catalytic for Catalytic's original breach of indemnification contract accrued on July 18, 1975. *Nardo v. Guido DeAscanis & Sons*, Del. Super., 254 A.2d 254 (1969) ("A cause of action for breach of contract accrues at the time of breach ..."). Yet Getty, after an unsuccessful attempt to join Catalytic as a third-party defendant in *Loden v. Getty* in April of 1975, did not finally file the present separate action against Catalytic until April of 1977. Getty contends, however, that this Court should not deny interest for any delay in filing in that Getty filed the action within the period established by the statute of limitations. 10 *Del.C.* § 8106 ("... no action based on a promise ... shall be brought after 3 years from the accruing of the cause of such action.")

■ The effect of a statute of limitations, although enacted primarily to exact diligence on the part of the plaintiff, *Husband (G.T.B.) v. Wife (G.R.)*, Del.Supr., 424 A.2d 12 (1980); *Bovay v. H.M. Byllesby and Company*, Del.Ch., 29 A.2d 801 (1943); and *Keller v. President, Directors and Company of Farmers Bank of State of Delaware*, Del.Super., 24 A.2d 539 (1942), is to establish a period of time within which the plaintiff is generally free to file his cause of action at his convenience. Thus, to determine whether this Court should deny Getty interest for any delay in filing its cause of action within the statute of limitations, it is necessary to determine whether pre-judgment interest is so intimately bound up with a plaintiff's cause of action as to enjoy the convenience that the statute of limitations affords the plaintiff in filing his cause of action during the period of the statute.

It has been held, as noted above, that interest in Delaware is a matter of right. *Moskowitz, supra.* The "matter of right"

language in *Moskowitz* is apparently an allusion to the fact that in some jurisdictions interest was once, because of moral and religious resistance to the taking of interest, within the discretion of the trier of fact. By eliminating the discretionary nature of interest, the law in Delaware has, indeed, recognized an exceedingly intimate connection between the plaintiff's cause of action and his claim to interest. This Court, therefore, holds that a plaintiff's claim to pre-judgment interest is so inextricably bound up with the plaintiff's cause of action as to enjoy the convenience which the statute of limitations affords the plaintiff in filing his cause of action within the period of the statute. Catalytic, therefore, is not entitled to a reduction of interest for any delay by Getty in filing the present action.

Catalytic also contends, however, that the amount of pre-judgment interest recoverable by Getty should be reduced because of delay by Getty in prosecuting the action after filing. Getty does, in fact, concede to substantial inactivity in prosecuting the present action. Getty argues, however, that this inactivity was attributable to the fact that it was awaiting the resolution of the indemnification issue in *James v. Getty v. Catalytic*, C.A. No. 102, 1975 and *Heim v. Getty and Koppers v. Catalytic*, C.A. No. 975, 1973, two cases in which Getty was prosecuting the same indemnification issue that was involved in the present action.

■ Inactivity for the reason cited by Getty is permissible. In *Frazer v. Bigelow Carpet Company*, 4 N.E. 620 (1886), Justice Holmes held that a plaintiff in a tort action may delay prosecution of a claim against a defendant denying liability to await a determination of the defendant's liability in another action against the defendant arising out of the same conduct. According to Justice Holmes, "the most prudent and economical thing for both parties was for plaintiff to postpone his suit until the test case had settled the question

[of the defendant's liability.]" *Frazer, supra.* Where, however, the prosecution of the test case is within the control of the plaintiff in the postponed action, as the test cases relied upon in the present controversy were, justice requires that the plaintiff be allowed to recover pre-judgment interest in the postponed action only if he is diligently pursuing the common question in the test case. Unjustifiable inactivity in the test case may serve to reduce the amount of pre-judgment interest recoverable in the postponed action.

■ In the present case there is some doubt as to how diligently Getty was pursuing the common question, the indemnity issue, in the test cases relied upon, *James v. Getty v. Catalytic, supra* and *Heim v. Getty and Koppers v. Catalytic, supra.* Before determining, however, whether this Court should, therefore, reduce the interest recoverable by Getty in the present action, it is necessary to determine exactly what kind of conduct on the part of a plaintiff will serve to suspend the running of pre-judgment interest. The authorities refer to the necessary conduct variously as "delay without valid reason," *Dorsey v. State ex. rel. Mulrine,* Del.Supr., 301 A.2d 516 (1972), "intractableness," *Maryland Casualty Company v. Hanby,* Del.Supr., 301 A.2d 286 (1973), delay that is the "fault" or "responsibility" of the plaintiff or his attorney, *Moskowitz v. Mayor & Council of Wilmington,* Del.Supr., 391 A.2d 209 (1978), or delay "caused" by the plaintiff, *E.M. Fleischmann Lumber Corp. v. Resources Corp. International,* D.Del., 114 F.Supp. 843, 844 (1953). The critical question, left unanswered to some extent, is what constitutes "delay." It may be fairly stated that delay such as will suspend the running of prejudgment interest is either (1) a failure by the plaintiff or his attorney to take some action in the prosecution of a case at a time that would otherwise seem appropriate to a reasonable person or attorney, or (2) the taking of some action by the plaintiff or his attorney that bears absolutely no reasonable relation to the prose-

cution of the case or is otherwise impermissible.

■ Before proceeding to the merits of the present controversy, it should be noted what is not required to suspend the running of pre-judgment interest. First, no element of bad faith is necessary. Only *Dorsey, supra,* which applied the "intractableness" standard, might arguably suggest that an element of bad faith is necessary. "Intractable", however, need not necessarily imply bad faith. One may be intractable for good faith reasons.

■ Second, it is not necessary that the plaintiff's conduct involve economic benefit to suspend the running of interest. Certain language in *Moskowitz, supra,* does seem to suggest otherwise. However, a careful reading of *Moskowitz* reveals no intention to require economic benefit. According to *Moskowitz,* the trial court has discretion to reduce interest recoverable by a delaying plaintiff because "it is improper for a plaintiff to benefit by his failure to prosecute his own claim." *Moskowitz, supra.* Getty, in the present controversy, argues that it has not benefitted by any failure to prosecute its claim. According to Getty, it could have earned on the amount wrongfully detained a rate of return much greater than that which it will receive from an award of interest at the legal rate. Whether such is the case, however, is irrelevant. The benefit alluded to in *Moskowitz* is not the kind of benefit contemplated by Getty's reasoning. The allusion in *Moskowitz* was to legal, not economic, benefit. A person is legally benefitted by something if he acquires a legal or equitable interest in it that he is not otherwise entitled to. 17 Am.Jur.2d *Contracts* 96. Viewed in this light, the above-mentioned language in *Moskowitz* was simply a statement to the effect that it is improper for a plaintiff to receive a legal or equitable interest in an amount as interest for his failure to prosecute his claim.

■ Proceeding now to the merits, a review of the docket for *James v. Getty v.*

*Catalytic,* the test case upon which Getty primarily relies to justify its delay in prosecuting the present action, reveals that there were six instances of conduct by Getty that warrant, under the above standard, a reduction of pre-judgment interest. First, on February 22, 1978, Getty filed an opening brief in support of its motion for summary judgment that was due, according to a brief schedule issued on November 18, 1977, on December 30, 1977. The length of Getty's delay in this instance was two months.

Second, from approximately the end of March, 1980 to the end of October, 1980 there was a lack of diligence on Getty's part in responding to several discovery requests by Catalytic. Only after an order compelling discovery was issued by this Court on October 17, did Getty comply with the discovery requests. The length of delay in this instance was seven months.

Third, from September, 1981 to April, 1982, when Getty filed a motion for summary judgment, the docket indicates no activity by Getty. Getty had, however, made several discovery requests throughout the first half of 1981 and deposed several persons in August of that year. Granting Getty time until November 1, 1981 to study the material discovered during 1981 and granting Getty March of 1982 to prepare the motion for summary judgment that it filed in April of that year, leaves a delay from the end of 1981 to April, 1982 of four months.

Fourth, on June 30, 1982, Getty filed an opening brief in support of its motion for summary judgment that was, according to a brief schedule dated April 6, 1982, due on April 30, 1982. On May 10, 1982, as a result of Getty's delay, the case scheduling office issued a delinquent brief notice to Getty warning of a dismissal of the case under Delaware Superior Court Rule 107(e) if Getty did not file the brief immediately. The total delay in this instance was two months.

Fifth, on December 22, 1982 Getty filed a reply brief in support of its motion for summary judgment that was, according to the most recent stipulated brief schedule, due on October 29, 1982. On November 8, 1982, as a result of Getty's delay, the case scheduling office issued to Getty yet another delinquent brief notice. The length of delay by Getty in this instance was two months.

Sixth, from January, 1983 to October, 1983 there was no apparent activity by Getty. The inactivity from January to April appears to have been justified in that Getty was awaiting a reply brief from Catalytic, which was finally filed on April 15, 1983. The five months of inactivity from May to October, however, cannot be entirely justified. Granting Getty three months to study Catalytic's reply brief and prepare its next action, the length of delay during this five-month period was two months.

In November of 1983, this Court issued an order in *James v. Getty v. Catalytic* pursuant to cross-motions for summary judgment that determined, in Getty's favor, all common questions that related to the indemnification agreement between Getty and Catalytic. In March of 1984, the Delaware Supreme Court finally refused to certify a request by Catalytic to appeal the interlocutory order. Thus, it may be fairly said that after March, 1984, Getty was no longer justified in postponing the present action to await a determination of common questions regarding the indemnification agreement in one of the test cases. Getty received what it was looking for in March of 1984 when the Delaware Supreme Court refused to hear Catalytic's interlocutory appeal of this Court's order of October 17, 1983. A determination of delay such as will suspend the running of pre-judgment interest after March of 1984, therefore, requires reference to the activity of Getty in prosecuting the present action.

In the present action, there was no apparent activity by Getty from the beginning of April, 1984 to the end of August, 1984, when Getty corresponded with this Court requesting an office conference.

The total length of delay in this instance, therefore, was five months.

■ In November, 1984 this Court set a trial date for the present action for December 2, 1985. Obviously, any delay within this time frame may not serve to suspend the running of pre-judgment interest.

Aggregating the total delay by Getty in prosecuting the *James* case from April, 1977 (when Getty filed the present action) to March, 1984 (when the common question was finally determined) and in prosecuting the present action from April, 1984 to November, 1984, reveals a total delay by Getty of 24 months (two years). This Court, therefore, holds that Getty is entitled to:

(a) interest on $200,000 of the judgment from July 18, 1975 (the date on which Getty was required, because of Catalytic's breach of the indemnification contract, to pay $200,000 in settlement of the *Loden* survival action) plus

(b) interest on $530,000 of the judgment from the date on which Getty was required, because of Catalytic's breach, to pay $530,000 in settlement of the *Loden* wrongful death action minus

(c) two years of interest on the entire $730,000 for Getty's two-year delay in prosecution.*

This Court further holds, in accord with *Papendick v. BoschGmbH*, Del.Super., C.A. No. 562, 1977 (Christie, J., August 4, 1981) that interest during both the pre-judgment and the post-judgment periods shall be at the legal rate of interest prevailing on the dates payments were made by Getty in settlement of the survival and wrongful death claims—6% per annum.

Finally, Getty has requested that this Court grant attorney's fees pursuant to Superior Court Civil Rule 11. Superior Court Civil Rule 11 states that:

> The signature of an attorney or party [to any pleading, motion, or other paper] constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Getty has not shown that Catalytic's actions in the present proceeding were not taken in good faith or that Catalytic took any action for an improper purpose. Attorney's fees, therefore, are denied.

ORDER ON NOTICE.

---

* This Court is assuming here that Getty was required to pay $530,000 on the *Loden* wrongful death claim prior to the first period of delay noted in the opinion (December 30, 1977 to February 22, 1978). Neither party has adduced evidence of exactly when Getty was required to pay the $530,000. The evidence indicates only that the settlement of the wrongful death claim occurred sometime after October 25, 1977 when Getty was appealing the verdict in favor of Mrs. Loden. If settlement, in fact, occurred after the first period of delay (or any other period of delay noted in the opinion), then obviously that particular period of delay will not be applicable to the $530,000 amount.