# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

NICHOLAS J. BISHOP,

          Plaintiff,

      v.

PROGRESSIVE DIRECT INS.
COMPANY, a foreign corporation,
and ENCOMPASS INDEMNITY
COMPANY, a foreign corporation,

          Defendants.

C.A. No. K14C-11-004 WLW

Submitted: April 26, 2019
Decided: May 3, 2019

## ORDER

Upon Plaintiff's Motion for Imposition of Prejudgment
Interest, Expert Fees and Court Costs.
*Granted in part; Denied in part.*

William D. Fletcher, Jr., Esquire of Schmittinger & Rodriguez, P.A., Dover, Delaware; attorney for Plaintiff.

Daniel P. Bennett, Esquire of Mintzer Sarowitz Zeris Ledva & Meyers, LLP, Wilmington, Delaware; attorney for Defendant Progressive Direct Insurance Company.

Arthur D. Kuhl, Esquire of Reger Rizzo & Darnell, LLP, Wilmington, Delaware; attorney for Defendant Encompass Indemnity Company.

WITHAM, R.J.

Upon consideration of the plaintiff's motion for costs and prejudgment interest, the defendant's partial opposition thereto, and the record of this case, it appears that:

1. The plaintiff, Nicholas Bishop (hereinafter "Bishop"), seeks an award of prejudgment interest after having successfully obtained a jury verdict against the Defendant Progressive Direct Insurance Company (hereinafter "Progressive") pursuant to 10 *Del. C.* § 2301(d).[1] Bishop also seeks an award of costs,[2] and expert witness fees and costs,[3] against Progressive and Defendant Encompass Indemnity Company (hereinafter "Encompass") pursuant to 10 *Del. C.* § 8906 and Superior Court Civil Rule 54 (hereinafter "Rule 54"). The total amount sought by the Plaintiff, after recalculations, is $36,666.28.[4]

2. Bishop's policy limits with Progressive, and Encompass were both

---

[1] Pl. Mot. at 3 (Bishop moves this Court to award $28,750.00 in prejudgment interest and an additional $15.75 per day after March 15, 2019 that the judgement remained unpaid.).

[2] *See* Pl. Ex. H. (Bishop initially calculated his Rule 54 costs, not associated with expert's fees and costs, to be approximately $2,3690.90, broken down as follows:
  (a) Court Filing Fees for LexisNexis services: $2,119.90;
  (b) Prothonotary (Trial Fee): $150.00; and
  © Sheriff & Insurance Commissioner: $100.00.
Bishop later conceded that costs amounting $75.00 for January 2017 and March 2019 jury lists are not recoverable and "recalculated" his Rule 54 costs at $2,121.15. *See Pl. Reply* at ¶ 8. However, this is mathematically impossible ($2,119.90 - $75.00 = $2,044.90). As a result, the adjusted total for Bishop's filing costs is $2,044.90. Based on that figure, the new adjusted total for Bishop's Rule 54 costs is $2,294.90 ($2,044.90 + $100.00 + $150.00)).

[3] *See* Pl. Ex. H (Bishop calculated 10 *Del. C.* § 8906 and associated Rule 54 costs to be $5,871.38.).

[4] $28,750.00 + $5,871.38 + $2,044.90 = $36,666.28.

$100,000.00 per person/$300,000.00 per accident. Prior to trial, in 2014, Bishop offered to settle his under-insured motorist claim (hereinafter "UIM") against Progressive for $100,000. Progressive rejected Bishop's offer and the matter went to trial. After a trial, the jury awarded Bishop $250,000, but as a result of the $50,000 collected before trial from the tortfeasor's policy limits, the actual amount of the judgment was $200,000.

3. The prevailing party in a civil action is entitled to be awarded court costs,[5] which often includes expert witness fees.[6] Generally speaking, the decision to award costs is left to the discretion of the trial court.[7] Additionally, in certain circumstances, that same party is entitled to an award of prejudgment interest.[8]

4. Concerning Rule 54 costs, not associated with expert's fees and costs, the Defendants, aside from an objection to the LexisNexis format, do not object to the majority of filing costs Bishop is due.[9] The Defendants only object to costs associated

---

[5] Super. Ct. Civ. R. 54(d).

[6] 10 *Del. C.* § 8906.

[7] *Enrique v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2636845, at *1 (Del.Super.), *aff'd* 16 A.3d 938 (Del. 2011) (Table) (citing *Donovan v. Delaware Water & Air Resources Comm'n*, 358 A.2d 717, 722–23 (Del. 1976)).

[8] *See* 6 *Del. C.* § 2301(d).

[9] The Defendants object to the format Bishop presented, detailing his filing costs. The Defendants assert that the format provided does not represent a detailed listing of the precise documents that are listed as filings on Bishop's LexisNexis filing. But Pl. Reply Ex. 2 appears to be the standard LexisNexis print out.

with substitution of counsel filing totaling $33.00.[10]

5. This Court has permitted prevailing parties to recover LexisNexis filing costs in the past.[11] In light of this, and the lack of additional objections on behalf of the Defendants, the Court will initially award Bishop $2,011.90 for costs, not associated with expert fees and costs, pursuant to Rule 54.

6. $33.00 remains in disputed costs associated with two substitution of counsel fees Bishop incurred when two of his former attorneys in this litigation applied for, and were appointed to, the bench of the Delaware Superior Court in 2015 and 2017. Notwithstanding the Defendants' failure to cite statutory or case law demonstrating those costs as unreasonable, Bishop's former attorneys decided to apply for judicial positions independent of the litigation. As such, the Court finds that it would be unreasonable to assign the Defendants responsibility for Bishop's substitution of counsel filing fees, as the Court views such awards would effectively sanction the Defendants for the career choices of Bishop's former attorneys. As a result, the Court uses its discretion and denies awarding Bishop those filing costs, amounting to $33.00.

7. Thus, after conducting a thorough examination of Bishop's listed costs, the Court awards $2,011.90 in costs, not associated with expert's fees and costs, pursuant

---

[10] D. Reply at ¶ 6.

[11] *Cooke v. Murphy*, 2013 WL 6916941, at *4 (Del. Super. Nov. 26, 2013) (citing *Reinke v. Furbush*, 2011 WL 7063367, at *1 (Del. Super. Dec. 1, 2011)); *see also Midcap v. Sears, Roebuck and Co.*, 2004 WL 1588343, at *3 (Del. Super. May 26, 2004).

to Rule 54(d).

8. Turning now to costs associated with experts fees and costs pursuant to Rule 54 and 10 *Del. C.* § 8906, Bishop seeks $5,871.38. The Defendants do not object to Dr. Govatos' $1,750.00 expert witness fee, nor $775.00 for videographer services. Accordingly, the Court awards Bishop $1,750.00 for Dr. Govatos' expert witness fee and $775.00 for the videographer's service fee.

9. However, the Defendants do object to two costs associated with expert fees and costs: (1) Dr. Pilkington's $2,500 fee for video deposition testimony and (2) a $846.38 fee for transcription services transcribing Dr. Pilkington's video deposition. The Defendants contend that the $2,500 fee is excessive and recommend a fee of $1,200. They further assert Bishop is not entitled to both the $846.38 transcription costs and the $775.00 videographer charge.[12]

10. This Court does not have a "fixed formula" to determine reasonable expert fees.[13] "The fees for witnesses testifying as experts ... shall be fixed by the court in its discretion, and such fees so fixed shall be taxed as part of the costs in each case and

---

[12] *McKinley v. Schaedel*, 2009 WL 4653782, at *1 (Del. Super. Nov. 30, 2009) (citing *Gress v. Viola*, 2007 WL 1748657, at *2 (Del. Super. May 31, 2007) (holding that "awarding costs for the videotaping of a deposition introduced at trial and the preparation of the transcript are duplicative, and therefore both are not permitted.").

[13] *Ambrosio v. Drummond*, 2017 WL 2544603, at *1 (Del. Super. June 12, 2017) (citing *Dean–Seeney v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 3380119, at *2 (Del. Super. Apr. 19, 2007)); *see also Silwinski v. Duncan*, 608 A.2d 730, 1992 WL 21132, at *3 (Del. Jan. 15, 1992) (Table).

shall be collected and paid as other witness fees are now collected and paid."[14] An award of expert testimony is usually intended to cover the costs related to in-court trial testimony, but it may also be used to cover the costs of deposition testimony that is utilized at trial.[15]

11. When determining an appropriate fee to award medical experts, this Court frequently utilizes guidance provided by the Medico–Legal Affairs Committee of the Medical Society of Delaware."[16] Under the Committee's 2006 recommendation, "an appropriate fee range for a deposition lasting up to two hours is $1,000 – $2,000."[17] In this case, adjusting for inflation using the Bureau of Labor Statistics' consumer price index calculator, a reasonable fee for a deposition lasting up to two hours in 2019 is $1,272.00 to $2,544.00.[18]

---

[14] 10 *Del. C.* § 8906.

[15] *Henry v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 4271205, at *3 (Del. Super. Sep. 25, 2017).

[16] *Henry*, 2017 WL 4271205, at *5 (citing *Enrique*, 2010 WL 2636845, at *1).

[17] *Id.* (citing Medico–Legal Affairs Committee, Recommended Guidelines for Medical Expert Fees (March 2006)).

[18] *Id. See also* U.S. Dep't of Labor, Bureau of Labor Statistics, CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm (last visited April 30, 2019) (entering $1,000 and $2,000 and comparing March 2006 to March 2019). Cf. *Smith v. Paul J. Renzi Masonary*, 2016 WL 1591030, at *2 (Del. Super. Mar. 24, 2016) (finding that rate for two hour deposition in 2015 was $1,058.50 - $1,905.30). The *Smith* court compounded the average annual percentage increases in consumer price index for medical care sector from January 1995 through December 2015 by using the calculator provided by the U .S. Dep't of Labor, available at http://data.bls-gov/timeseries/CURR0000SAM?output_view=pct_12mths. (last visited March 23,

12. With those guidelines in mind and also considering that Dr. Pilkington's testimony lasted 1 hour and 48 minutes and dealt with complex medical issues, the Court finds his fee is reasonable and, thus, will award $2,500.00.[19]

13. The Court must also decide whether Bishop may recover the transcription fee for Dr. Pilkington's video deposition. Bishop contends that his case is distinguishable from this Court's precedent and asserts that the transcript here is not merely a duplication as it contains the objections made by counsel during the deposition and was further entered into evidence during trial to establish a record to review regarding those deposition objections.[20] Under these specific circumstances, and with an awareness of previous precedent, the Court agrees with Bishop that this case carves out a narrow exception to the general rule. As a result, the Court awards Bishop $846.38 for the transcription fee.

14. The Court would be remiss if it did not note that Defendants' reading of *Banks v. J&N Hickman Family Limited Partnership,*[21] and this Court's general rule is correct. This Court has consistently held that transcription costs are duplicative of

---

2016).

[19] *See Henry,* 2017 WL 4271205, at *5 (this Court held that an expert was entitled to a reasonable fee of $2000 for a video deposition that lasted 54 minutes, and regarded less complexity.).

[20] Pl. Reply at ¶ 10.

[21] 2006 WL 240641 (Del. Super. Jan. 11, 2006).

the videographer costs.[22] However, it appears to the Court that *Banks* is silent as to any mention that the rule controls in situations where transcripts are presented to the Court for the purpose of establishing a reviewable record concerning redacted objections made at a deposition.

15. In this case, the parties' objections at Dr. Pilkington's deposition are recorded in the transcript, but appropriately redacted from the video deposition. Without this record, there would be nothing on record, in the event that one of the parties chose to appeal this Court's decision. Since a reviewable record is always preferable to a void record, the Court finds, in this narrow exception, the transcript and video of Dr. Pilkington's deposition are not duplicative and its production fee is recoverable by Bishop. Therefore, the Court awards Bishop $864.38 for the transcription costs associated with Dr. Pilkington's video deposition.

16. As a result of the Court's decisions regarding experts fees and costs, the Court awards Bishop $5,871.38.

17. Finally, the Court reaches Bishop's assertion that he is entitled to $28,750 in prejudgment interest. Progressive contends that because the Order for Entry of Judgment issued by this Court on March 15, 2019 entered judgment against Progressive for $100,000, Bishop's settlement offer of $100,000 did not exceed the

---

[22] *Banks*, 2006 WL 240641, at *2 *(citing Tolson v. Chorman*, 2005 WL 1953039, at *2 (Del. Super. July 12, 2005). *See also Kerr v. Onsusko*, 2004 WL 2744607, at *1 (Del. Super. Oct. 20, 2004); *Midcap*, 2004 WL 1588343, at * 4; *Fellenbaum v. Ciamaricone*, 2002 WL 31357917, at *6 (Del. Super. Oct. 16, 2002); *Cimino v.. Cherry*, 2001 WL 589038, at *2 (Del. Super. May 24, 2001); and *Cubberly v. Orr*, 1995 WL 654144, at *2 (Del. Super. ).

8

statutory judgment amount required by section 2301(d).[23] Bishop contends that while Progressive argues that the jury's damages award as entered by the Court must be compared with any settlement proposal pursuant to section 2301(d), it misinterpreted section 2301(d). Bishop argues rather it is the jury's award only that is compared, regardless of any allocation, and if the jury's award is greater than the section 2301(d) settlement proposal, the statutory requirements for prejudgment interest are satisfied.[24]

18. If a plaintiff wins a tort action for compensatory damages, 6 *Del. C. §* 2301(d) requires the addition of prejudgment interest to a final judgment, commencing from the date of injury.[25] That statute applies only if, prior to trial, the plaintiff had made a written settlement demand, valid for a minimum of thirty days, in an amount less than the entered judgment.[26] If the elements of section 2301(d) are met, prejudgment interest is calculated based on the damages awarded by the jury, not the existence of, or terms of, coverage.[27] The Delaware General Assembly enacted section 2301(d) to encourage settlements by "encouraging parties to make fair offers

---

[23] D. Reply at ¶ 1 (Progressive is the only defendant subject to possible prejudgment interest liability.).

[24] Pl. Reply at ¶ 1.

[25] *Rapposelli v. State Farm Mut. Auto. Ins. Co.*, 988 A.2d 425, 429 (Del. 2010).

[26] 6 *Del. C. §* 2301(d); *see also Bullock v. State Farm Mut. Auto. Ins.* Co., 2012 WL 1980806, at *6 (Del. Super. May 18, 2012) (citing *Enrique*, 2011 WL 1004604, at *2).

[27] *Bullock*, 2012 WL 1980806, at *6 (citing *Rapposelli*, 988 A .2d at 427–29).

sooner, with the effect of reducing court congestion."[28]

19. In *Bullock,* a case conceded by Progressive as applicable, the plaintiff demanded the UIM policy limits of $100,000 that was rejected by the defendants.[29] The jury found for the plaintiff and awarded $128,000.[30] The judgment entered based upon the jury award was capped at the contractual limits of the State Farm policy, i.e. $100,000.[31] State Farm argued that since the capped amount is the same amount as the policy limits demanded, the requirements of 6 *Del. C. § 2301(d)* had not been met.[32] This Court rejected that argument.[33]

20. The Court further finds the guidance of the Delaware Supreme Court in *Christina Care Health Services v. Crist*[34] instructive. In *Crist,* the plaintiff demanded a settlement in the amount of $1.25 million in separate demands to separate

---

[28] *Id.* at *7 (citing *Enrique,* 2011 WL 1004604, at *3).

[29] *Id.* at *1.

[30] *Id.* at *3.

[31] *Id.*

[32] *Bullock,* 2012 WL 1980806, at *7.

[33] *Id.* at *7-8 (The *Bullock* court disagreed based on (1) the Delaware legislature's intent in passing 6 Del. C. § 2301(d) and (2) the defendant did not demonstrate that section 2301(d) "clearly and convincingly" violated the U.S. and Delaware Constitutions. At the hearing, Progressive invited the Court to overrule the President Judge's decision in *Bullock.* The Court declines to do so.).

[34] 956 A.2d 622 (Del. 2008).

defendants.[35] After trial, the jury awarded the plaintiff $2 million that was allocated between both defendants in a 60-40 split, making one defendant responsible for $1.2 million while the other was responsible for $800,000.[36] This Court denied the plaintiff's prejudgment interest request on the grounds that each of those amounts were less than the plaintiff's $1.25 million settlement demand.[37] On appeal, however, our Supreme Court reversed, and ordered prejudgment interest be imposed holding that the allocation of the jury award between defendants was irrelevant in determining whether the damages awarded were greater than the settlement demands.[38]

21. In this case, and after carefully considering the parties' arguments that accompany these particular facts, the Court finds that the Plaintiff's settlement offer in 2014 is statutorily sufficient and, thus, is entitled to prejudgment interest.

22. The Court views this case as akin to cases were juries have allocated fault.[39] Here, the *total judgment entered for damages awarded* to the Plaintiff was $250,000 minus $50,000 already received, for a total of $200,000.[40] The Court then allocated $100,000 to Progressive and $100,000 to Encompass, based solely on the

---

[35] *Crist*, 956 A.2d at 624.

[36] *Id.* at 625.

[37] *Id.*

[38] *Id.* at 629-30.

[39] The Court notes that in this case, the jury did not allocate fault among the Defendants.

[40] 6 *Del. C.* § 2301(d) (emphasis added).

Defendants' UIM policy limits. As a result, the Court finds the Plaintiff's settlement proposal to Progressive in 2014 satisfied the plain, and unambiguous, statutory language and requirements pursuant to 6 *Del. C. § 2301(d)* and thus an award of prejudgment interest is appropriate.

23. In the alternative, Progressive argues it should not be subject to prejudgment interest beyond January 26, 2017 due to the litigation's numerous delays it blames on the Plaintiff and the Court.[41] In support, Progressive cites *Getty Oil Co. v. Catalytic, Inc.,*[42] and argues that pursuant to *Getty*, the Court may reduce any prejudgment interest if there is a delay in proceeding to trial or judgment that a defendant is not responsible.[43] Progressive specifically points to the following as delays pursuant to *Getty*: (1) Bishop asking for a mistrial during the initial trial, rather than proceed to a jury verdict;[44] (2) the initial sitting judge's retirement;[45] (3) Bishop's former attorney's appointment to the Delaware Superior Court;[46] (4) the Court's

---

[41] D. Mot. at ¶ 2-5.

[42] 509 A.2d 1123, 1124 (Del. Super. 1986).

[43] D. Reply at ¶ 2.

[44] *Id.* at ¶ 2.

[45] *Id.* at ¶ 3.

[46] D. Reply at ¶ 3.

schedule;[47] and (5) Bishop's continuance request on December 6, 2018.[48] Bishop contends that those claims are "factually inaccurate"[49] and misstate *Getty*.

24. In Delaware, prejudgment interest is available as a matter of right, but the right is not absolute.[50] If a plaintiff has delayed the prosecution of an action, the Court may, in its discretion, reduce the amount of prejudgment interest recovered.[51]

25. The Court agrees with Bishop that Progressive has misstated *Getty*. In *Getty*, the Delaware Supreme Court noted that the type of delay warranting a suspension of prejudgment interest might involve: (1) "delay without valid reason;"[52] (2) "intractableness;"[53] (3) "delay that is the 'fault' or 'responsibility' of a plaintiff or his attorney;"[54] or (4) "delay was 'caused' by the plaintiff."[55] And while the *Getty* court further found that the tolling time of prejudgment interest was not suspended

---

[47] *Id.* at ¶ 4.

[48] *Id.* at ¶ 5.

[49] Pl. Reply at ¶ 3.

[50] *Getty*, 509 A.2d at 1124 (citing *Moskowitz v. Mayor and Council of Wilmington*, 391 A.2d 209, 210 (Del. 1978)).

[51] *Id.*

[52] *Id.* at 1126 (citing *Dorsey v. State ex. rel. Mulrine*, 301 A.2d 516, 518-19 (Del. 1972)).

[53] *Id.* (citing *Maryland Casualty Co. v. Hanby*, 301 A.2d 286, 288 (Del. 1973)).

[54] *Id.* (citing *Moskowitz*, 391 A.2d at 211 (citing *Hanby*, 301 A.2d at 288)).

[55] *Id.* at 1124 (citing *E.M. Fleischmann Lumber Corp. v. Resources Corp. Int'l*, 114 F.Supp. 843, 844 (D. Del. 1953)).

between setting of trial date and commencement of trial on date set, the Supreme Court's decision was silent as to any reference to delays caused by a court.[56]

26. The Court is unpersuaded by Progressive's argument and finds that despite Progressive's claims regarding Bishop's and this Court's fault for the delays in litigation, the record contains no evidence that Bishop acted in any way that justifies reducing prejudgment interest.

27. First, regarding the mistrial, it appears that it may have been asked for, and granted by this Court, because Progressive's expert failed to limit his opinions to those set forth in his pretrial report. The Court finds it difficult, if not impossible, to assign this as fault to Bishop, nor does the Court agree with Progressive that Bishop asking for a mistrial was a delay in the spirit of *Getty*.

28. Second, the Court finds that Bishop is not at fault for the delay his former attorneys caused by applying for, and accepting an appointment to, the Delaware Superior Court bench. It is true that this action delayed the litigation to a degree, but the Court finds it does not rise to the level of fault required by *Getty*. Here, the Court finds it unlikely that Bishop was consulted by his former attorney regarding his career aspirations and, assuming arguendo he was, it was the attorney's decision independent of the litigation. This kind of action does not appear to be contemplated by *Getty*.

29. Third, the second trial was continued, on at least one occasion, because of

---

[56] *Getty*, 509 A.2d at 1128.

14

the Court's calendar. The Court finds it would be unreasonable to penalize Bishop and find him at fault for delays caused by the business and priorities of this Court. The Court emphatically states that delays of that nature do not warrant the suspension of prejudgment interest pursuant to *Getty*.

30.  Finally, Progressive contends Bishop's December 2018 continuance request establishes a delay pursuant to *Getty*.[57] Again, the Court disagrees. In this case, Bishop requested a continuance: (1) *only* after being notified by the Court that the trial, due again to the Court's schedule, would face significant interruptions due to other matters considered by the Court to be higher priority and (2) *only* after consulting with the Defendants. It is unfathomable to the Court how Bishop was at fault for that. Furthermore, the Defendants did not appear to object to Bishop's continuance request at that time, but yet now cite it as a Hail Mary argument. Thus, the Court cannot, and will not, consider the business and priorities of the Court, and a continuance request that arises in light of those scheduling conflicts as Bishop's fault.[58] This is certainly not the type of fault that *Getty* envisioned.

31. After a thorough examination of the specific circumstances presented here, the Court finds Bishop was not at fault for litigation delays that rise to the standard articulated in *Getty*. Furthermore, since Progressive has not objected to the

---

[57] D. Reply at ¶ 5.

[58] The Court questions Progressive's representation of the December 2018 continuance as "circumstances beyond Progressive's control." *See Id.* Progressive's infers that Bishop did not consult with Progressive and that he unilaterally moved for the continuance.

prejudgment interest calculations in the event the Court did not reduce prejudgment interest,[59] the Court awards Bishop prejudgment interest, per his calculations, in the amount of $28,750.00. An additional $15.75 should be awarded everyday after March 15, 2019 that the judgment remains unpaid.

## CONCLUSION

32. For the reasons stated above, Bishop's motion is **GRANTED IN PART AND DENIED IN PART.** The Court grants prejudgment interest in the amount of $28,750.00 with an additional $15.75 per day after March 15, 2019 that the judgment remains unpaid. Second, the Court grants costs, not associated with expert's fees and costs, in the amount of $2,011.90. Finally, the Court grants $5,871.38 as expert's fees and costs. In total, the Court awards Bishop $36,633.28 in prejudgment interest and costs.

**IT IS SO ORDERED.**

*/s/ William L. Witham, Jr.*
Resident Judge

WLW/dmh

---

[59] Pl.'s Mot. at ¶ 2-3. (Bishop calculates the prejudgment interest as of March 15, 2019 as $28,750. The interest rate was calculated by the Plaintiff as 5.75% (.75 + 5% (years) per annum. 5.75 x 100,000 (amount the jury's award was reduced by previous advance) equals $5,750 per annum interest. $5,750 x 5 = $28,750. The per diem interest was calculated by Bishop is $15.75 per day ($5,756.00/365)).